NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No.  08-2647

_____

SENIOR SETTLEMENTS, LLC,

Appellant

v.

GROWTH TRUST FUND; TRUSTEES OF THE STEINMETZ
GROWTH TRUST FUND;
ABRAHAM WEINGARTEN; FAY WEINGARTEN; MICHAEL STEINMETZ;
LEAH COHN, individually and jointly; BERNAT STEINMETZ,

Appellees


_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-05-cv-00777)
District Judge: Honorable Jerome B. Simandle

_____

Submitted Under Third Circuit LAR 34.1(a)
March 8, 2010

_____

Before: AMBRO, SMITH and MICHEL,* Circuit Judges


(Filed   April 8, 2010)


_____

*Honorable Paul R. Michel, Chief Judge, United States Court of Appeals for the
Federal Circuit, sitting by designation.

OPINION

AMBRO, Circuit Judge

This appeal involves a contract dispute. Senior Settlements, LLC alleges that it entered into valid contracts with the Growth Trust Fund to purchase the beneficial rights to the proceeds of various life insurance policies. The District Court granted the motion of the appellees (who include the Growth Trust Fund and its Trustees) for summary judgment, concluding that the parties never agreed to such transactions. The District Court later denied Senior Settlements' motion for reconsideration.[1]

On appeal, Senior Settlements argues that the parties entered into valid and enforceable contracts and that the Trustees attempted to rescind these contracts in bad faith. In the alternative, they argue that there are genuine issues of material fact that preclude summary judgment. We disagree, and therefore affirm.

I.

Senior Settlements is a "life settlement" company. In this capacity, it is "in the business of purchasing life insurance policies from the owners of such policies." App. 182. As Senior Settlements explains, "Entering into a Life Insurance Policy and Sale Agreement with Senior Settlements . . . enables you to sell the life insurance policy which you own . . . for cash at a discount from its face value." *Id.* During the remainder of the

_____

[1] The District Court also denied Senior Settlements' motion for summary judgment.

original policy owner's life, Senior Settlements (or its designee) pays the premiums on the policy. Once the initial owner passes away, Senior Settlements collects the proceeds from the insurance policy.

The policies at issue in this appeal were initially owned by Bernat Steinmetz. In January 1992, Steinmetz created the Growth Trust Fund and placed his policies in this trust. In June 2004, Senior Settlements approached the Trust about purchasing the proceeds from these policies. At issue on appeal is whether the parties entered into valid and enforceable contracts.

Each of Senior Settlements' purported offers included the following "Performance" provision:

> This Agreement has been executed first by the Purchaser [Senior Settlements] as an offer to purchase the Policy hereunder, which offer shall be open for acceptance by Seller until 5:00 p.m. on 7/23/04, at which time the offer shall be deemed to be withdrawn unless Purchaser has received a fully executed counterpart to this Agreement from Seller. *Time is of the essence in this Agreement.*

*Id.* at 413 (emphasis added). The purported offers further provided that "[n]o amendment, modification, termination, or waiver of any provision of this Agreement shall be effective unless the same shall be in writing and signed by Seller and Purchaser." *Id.* Senior Settlements itself never signed the purported offers.[2] Furthermore, the Trustees

---

[2] Although both parties focus on this fact, we only note it in passing. "A party, who has originally insisted that both parties sign a document before a mutually binding agreement may come into existence, may dispense with that requirement." *Roadway Express, Inc. v. Gen. Teamsters, Chauffeurs & Helpers Union, Local 249*, 330 F.2d 859, 863-64 (3d Cir. 1964). In this case, we need not reach the issue of whether Senior

3

did not attempt to accept them until August 10, 2004—over two weeks after their stated deadline.[3] Regardless, in September, the policies' designation of ownership was changed to Senior Settlements.[4] At that time, Senior Settlements did not notify the Trustees of this change in ownership or make any payments to them. A dispute then arose between the parties over whether they had entered into valid and enforceable contracts.

Due to the "Performance" provision of the purported offers, the appellees expected to receive signed copies of the final agreements from Senior Settlements before the transaction was finalized. None was ever sent. On October 21, 2004, Bernat Steinmetz wrote a letter to Senior Settlements, directing it not to proceed until he received signed copies of the agreements. However, Steinmetz was not a party to the contracts and had no authority to speak for the Trust.

Senior Settlements responded to Steinmetz that same day with two letters. In the first letter, it explained that "[i]n order . . . to comply with [Steinmetz's] request, [it] need[ed] [his] signature notarized." *Id.* at 249. They further noted that "there appear[ed]

---

Settlements "dispensed" with the requirement that the agreements be signed.

[3] Indeed, the District Court correctly notes, "There is no dispute that the Trustees did not agree to the purchase of the policies within the time limit in the purported offer." App. 4-5. The dispute, instead, is over whether Senior Settlements either waived the deadline or accepted the Trustees' counteroffer.

[4] This was permitted because the Trustees had signed change-of-beneficiary and ownership forms in September as a condition of entering into its agreements with Senior Settlements. These actions were at the direct prompting of the relevant insurance company (American General), not Senior Settlements.

4

to be a discrepancy with the agreements you already signed with us." *Id.*[5]  In the second letter, Senior Settlements reassured Steinmetz that they were "working diligently in order to complete this transaction in a timely and efficient manner." *Id.* at 254.  They also apologized that "this particular transaction ha[d] taken considerably longer" than was "typical," and thanked Steinmetz for his "patience and perseverance." *Id.*  The letter concluded, "I can assure you that we are doing everything possible to expedite the transaction[,] and we look forward to a successful conclusion in the very near future." *Id.*

On October 22, 2004, Faye Weingarten (a Trustee) sent a letter to Senior Settlements, again instructing it not to proceed with the transaction until the Trustees received copies of the signed agreements.  Senior Settlements did not respond to this letter.  On October 28, 2004, Michael Steinmetz (also a Trustee) faxed and mailed a withdrawal letter to Senior Settlements, noting that "the Trustees and the Insured Bernat Steinmetz hereby withdraw all of the Sale Offers for all of the Steinmetz policies, effective immediately." *Id.* at 265.  By then, unbeknownst to the Trustees, Senior Settlements had already withdrawn money from the policies.[6]

In the end, Senior Settlements attempted to tender payment to the Trustees on November 1, 2004.  The Trustees returned the checks and informed Senior Settlements

---

[5] Senior Settlements did not specify the nature of this "discrepancy."

[6] In its hearing before the District Court, Senior Settlements' counsel admitted as much.  The District Court asked, "Did the Trustees know any time before October 28th that Senior Settlements had taken money out of [the] policies?" App. 757.  Counsel responded, "They would not have known it, nor would they have any reason to know it.  I don't believe there is any evidence that they knew that." *Id.* at 757-58.

5

that any future checks would be similarly rejected. Following a volley of letters, Senior Settlements brought the current action.

While Senior Settlements initially filed an action for declaratory judgment in the Superior Court of New Jersey, the appellees removed the case to federal court. The parties eventually filed cross-motions for summary judgment. The District Court granted the appellees' motion. The Court concluded,

> [I]f the New Jersey Supreme Court were faced with the issue that faces this Court today, it would find that there was no contract when Defendants attempted to accept an expired offer and (1) Plaintiffs, although beginning to perform, did not make their conduct known to Defendants; (2) Defendants had no reason, by all counts, to know that Plaintiffs were performing; and (3) Defendants received no benefit of Plaintiffs' partial performance prior to terminating their counteroffer.

*Id.* at 16-17. Senior Settlements filed a timely motion for reconsideration, which the District Court denied. Senior Settlements then filed this timely appeal.

## II.

The District Court had diversity jurisdiction under 28 U.S.C. § 1332.[7] We have jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over an order granting summary judgment. *See Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). In determining whether an order for summary judgment was entered correctly, we apply the same test used by the District Court. Summary judgment is appropriate when, drawing all reasonable inferences in favor of the nonmoving party, "there is no genuine issue as to any material fact and that

---

[7] On appeal, neither party disputes that New Jersey law governs this dispute.

6

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[8]

## III.

Under New Jersey law, "[a] contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (*quoting Borough of W. Caldwell v. Borough of Caldwell*, 138 A.2d 402, 410 (N.J. 1958)). However, "a contract does not come into being unless there [is] a manifestation of mutual assent by the parties to the same terms." *Johnson & Johnson v. Charmley Drug Co.*, 95 A.2d 391, 397 (N.J. 1953). "[W]hile the manifestation of mutual assent is usually had by an offer and an acceptance either in words or by conduct, it is elementary that there can be no operative acceptance by acts or conduct unless the offeree's assent to the offer according to its terms is thereby *unequivocally shown*." *Id.* (emphasis added). As such, although "[c]onduct may take the place of written or spoken words in the formation of contracts[,] silence does not ordinarily serve as an acceptance of an offer." *Id.* In the end, "[t]here . . . needs [to] be an agreement—a 'meeting of the minds' on the subject matter . . . , or there is no legally enforceable obligation." *Id.*

For the following reasons, we hold that there was no agreement between Senior

---

[8] "Generally, the denial of a motion for reconsideration is reviewed for an abuse of discretion." *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1203 (3d Cir. 1995). "Where a district court's denial of a motion to reconsider is based upon the interpretation of legal precepts, however, our review of the lower court's decision is plenary." *Id.* "[T]o the extent that the district court's order was based on a factual conclusion, we review under a 'clearly erroneous' standard." *Id.*

Settlements and the Trust in this case.  We therefore affirm.

IV.

The key contract term at issue here is the explicit deadline included by Senior Settlements under each of the purported agreements' "Performance" provision.  To repeat, this passage provided that the "offer shall be open for acceptance by Seller until 5:00 p.m. on 7/23/04."  App. 413.  The provision later emphasized that "[t]ime is of the essence in this Agreement."[9]  *Id.*  We hold that, due to this explicit deadline, the offer was not open when the Trustees attempted to accept it on August 10, 2004.

"Just as the offeror is at liberty to make no offer at all, it is also at liberty to dictate whatever terms it sees fit if it chooses to make an offer."  1 *Williston on Contracts* § 5:5 (4th ed. 2009).  Under New Jersey law, "[t]here is no question that an offeree must accept an offer within the time specified in the offer . . . ."  *State v. Ernst & Young, LLP*, 902 A.2d 338, 345 (N.J. Super. Ct. App. Div. 2006); *see also* Restatement (Second) of Contracts § 41 cmt. a (1981) ("Just as the offer may prescribe the identity of the offeree (§ 29) or the form of acceptance (§ 30), so it may prescribe a time limit for acceptance.

_____

[9] New Jersey courts have often noted the importance of such language.  *See, e.g.*, *Paradiso v. Mazejy*, 69 A.2d 15, 17 (N.J. 1949) ("'[I]f it is stipulated that time is of the essence, . . . prompt performance is essential . . . .'") (*quoting Reade v. McKenna*, 134 A. 371, 372 (N.J. Ch. 1926)); *Marioni v. 94 Broadway, Inc.*, 866 A.2d 208, 217 (N.J. Super. Ct. App. Div. 2005) ("[I]f the contract itself provides a clear understanding that time is of the essence, then it is well-settled that 'prompt performance is essential . . . .'") (*quoting Paradiso*, 69 A.2d at 17); *Tiedemann v. Cozine*, 688 A.2d 1056, 1058 (N.J. Super. Ct. App. Div. 1997) ("a finding that time was of the essence" required "a writing stating that time was of the essence" and a determination "that the time allowed be reasonable and specific").

8

Such a limitation must be complied with."). Absent a waiver of the deadline by the offeror, "[a]n offeree's power of acceptance is terminated at the time specified in the offer." Restatement (Second) of Contracts § 41(1) (1981). Senior Settlements concedes as much on appeal. *See* Appellant's Br. 30 ("Senior Settlements recognizes the general rule—relied upon by the District Court—that an offeree's power of acceptance is usually terminated by the temporal expiration of the offer."). Since the putative agreements stated that "[t]ime is of the essence" and the Trustees failed to execute the agreements by the designated deadline, no contract was formed on August 10, 2004. Although Senior Settlements is correct in arguing that an offeror may waive an explicit deadline by assenting to late acceptance, such a waiver must have been communicated to the Trustees (through either word or deed) for the waiver to bind them.

Senior Settlements cites *Synnex Corp. v. ADT Security Services, Inc.*, 928 A.2d 37 (N.J. Super. Ct. App. Div. 2007), for the argument that it waived the agreements' deadlines by assenting to late acceptance. We conclude that *Synnex* is not on point. There, an alarm company agreed to install an alarm system at a business's warehouse. After the system was installed, there was a burglary. The business brought suit. The alarm company argued that it was not liable because the contract was never signed by anyone in its home office, as per the contract's explicit terms. The Court concluded that there was still a valid and enforceable contract between the parties. Although the parties did not abide by the contract's explicit performance provision, the alarm company waived this requirement by installing the alarm system and accepting payment for its goods and

9

services. In other words, performance constituted waiver. The Court reasoned, "ADT's shipment and installation of the security system at the Synnex warehouse and subsequent monitoring constituted an unequivocal acceptance of the contract." *Id.* at 43. The Court added, "Synnex's receipt and payment for these goods and services reflected its understanding that it had contracted with ADT in accordance with the terms of the ADT form contract." *Id.*

Although there are similarities between *Synnex* and the current appeal, there are also key differences. In this case, once the Trustees signed and returned the agreements, they were greeted—not with an installed alarm system or some other unequivocal sign of Senior Settlements' assent—but with silence. Indeed, the record lacks any conclusive evidence that Senior Settlements attempted to communicate directly to the Trustees its unequivocal consent to late acceptance—at least prior to revocation.[10] Furthermore, there was no direct negotiation between the parties to extend the offer period and no attempt to tender payment during this period. While it is true that Senior Settlements withdrew

[10] Senior Settlements argues that its October 21, 2004, letter to Bernat Steinmetz was such a direct communication. We disagree. First, this argument ignores that Senior Settlements' letter followed Steinmetz's earlier instruction "not [to] proceed with any Life Settlement until I receive a copy of my contract." App. 247. This instruction was reinforced a day later in a letter from Faye Weingarten (one of the Trustees). Nevertheless, no copies of the agreements were ever sent to Steinmetz or to any of the Trustees. Second, Senior Settlements' argument also ignores that its letter was directed to Bernat Steinmetz (who Senior Settlements itself notes "was not a party to the Agreements," Appellant's Br. 11) rather than to the Trustees. Given this, Senior Settlements cannot both rely on its communication with Steinmetz to support the validity of their contract with the Trustees while also ignoring Steinmetz's instructions "not [to] proceed."

money from the policies, the Trustees were unaware of this activity—and Senior Settlements' counsel conceded as much before the District Court. In the end, no contract was formed between the parties on August 10, 2004.

At most, when the Trustees returned the signed documents to Senior Settlements after the explicit deadline, these signed documents constituted a counteroffer. "An expression of assent that modifies the substance of the tender, while it may be operative as a counter-offer, is yet not an acceptance and does not consummate a contract." *Johnson & Johnson*, 95 A.2d at 397. In this case, the Trustees' "expression of assent" altered the sale's explicit deadline—July 23, 2004—a deadline whose importance was reinforced by language in the initial proposed agreements that emphasized that "time is of the essence." By returning the proposed agreements to Senior Settlements after the deadline, the Trustees altered an essential contract term—the deadline itself. As noted this constituted at most a counteroffer, one that Senior Settlements never accepted either directly through communication or indirectly through its conduct.

Senior Settlements never signed and returned the proposed agreements to the Trustees. Furthermore, it never directly communicated its acceptance to the Trustees nor did it communicate its assent through its conduct until it attempted to tender payment on November 1, 2004.[11] By then, however, the Trustees had already revoked their

---

[11] Senior Settlements relies on a letter from one of the insurance companies (American General) to the Trustees on September, 13, 2004, to argue that Senior Settlements' conduct created a valid and enforceable contract between the parties. This letter pertained to problems with the Change of Ownership and Change of Beneficiary forms that the Trustees had initially executed. American General noted that the Trustees

11

counteroffer.[12]

* * * * *

For these reasons, we affirm the judgment of the District Court.

---

had previously "signed but not dated" a related form. App. 806. The letter also explained that American General would be "unable to process" any change in ownership until the "new owner . . . sign[ed] and date[d] the Change of Beneficiary form." *Id.* On September 21, 2004, the Trustees again signed and returned the required forms. At the same time, they received no related communications from Senior Settlements. In the end, we agree with the District Court that, by returning these forms to American General, the Trustees had simply "executed all the necessary forms to facilitate the purchase of their policies by Senior Settlements . . . , but that those executions communicated a counteroffer to Senior Settlements that it never effectively accepted because it did not inform Defendants, by words or deeds, of its acceptance." *Id.* at 38.

[12] The Trustees' counteroffer was revoked by Michael Steinmetz in his October 28, 2004, letter—days before Senior Settlements attempted to tender payment to the Trustees.